```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------- X
                                                                  :
CHARMELL COOPER, on behalf of I.M.,                               :
                                                                  :
                              Plaintiff,                          :   MEMORANDUM DECISION
                                                                  :   AND ORDER
                - against -                                       :
                                                                  :   19-cv-2833 (BMC)
COMMISSIONER OF SOCIAL SECURITY,                                  :
                                                                  :
                              Defendant.                          :
                                                                  :
                                                                  :
----------------------------------------------------------------- X
```

**COGAN**, District Judge.

Plaintiff, on behalf of her minor son, seeks review of the decision of the Commissioner of Social Security, following a hearing before an Administrative Law Judge, that her son does not qualify for supplemental security income. Plaintiff appears to have abandoned the action, but I have chosen to review the ALJ's decision to ensure that it was based on substantial evidence. It was, and it was also procedurally proper. The complaint is therefore dismissed.

## BACKGROUND

Plaintiff protectively filed an application for supplemental security income on behalf of her underaged son. The agency denied the application and plaintiff requested a hearing before an ALJ. Plaintiff and her son appeared at the hearing without representation and the ALJ subsequently issued a decision, finding that the "claimant has not been under a disability within the meaning of the Social Security Act" since the date of the filing of his application.

Plaintiff appealed the ALJ's decision to the Social Security Appeals Council, arguing that she "felt the decision was wrong and bias[ed]" and submitting 19 pages of additional evidence

for consideration.  The Appeals Council denied plaintiff's request for review, finding no reason under its rules to review the ALJ's decision.

Once plaintiff, still proceeding *pro se*, commenced this review action, I set a briefing schedule requiring the Commissioner to first move for judgment on the pleadings, and permitting 30 days thereafter for plaintiff to respond or cross-move.[1]  However, soon after the Commissioner filed the 334-page administrative transcript (an unusually small record for this type of proceeding), plaintiff retained counsel.  Counsel moved for a new schedule, which would have required plaintiff to move for judgment on the pleadings by November 12, 2019, and the Commissioner to respond by January 13, 2020.  I granted the requested extension, but I cautioned counsel that his motion had resulted in "a lengthy schedule and neither side should anticipate further extensions."

Two months passed without plaintiff filing her motion.  Several days after the deadline, plaintiff's counsel requested another two-month extension, citing a calendar mis-entry as the justification.  I denied the request, referring to my previous Order and noting that nearly six months to file a brief on such a small record was unreasonable.  Nevertheless, I informed plaintiff that should she "file her brief before the Court [decides the case on the administrative record], the Court will consider it."

I have waited an additional six months, yet plaintiff has yet to file any brief or motion.  Rather than dismiss the case as abandoned, I have reviewed the record to determine whether the ALJ's decision was supported by substantial evidence.

---

[1] When a *pro se* plaintiff commences a social security proceeding, I require the Commissioner to move first because it is easier for a *pro se* plaintiff to respond to the Commissioner's points than to explain the entire record in the abstract.  If counsel subsequently appears for the plaintiff, however, I then revert to the usual practice in this district of having the plaintiff, who is effectively an appellant, first brief the alleged errors in the ALJ's decision.

## DISCUSSION

If the Commissioner's decision is supported by "substantial evidence" and there are no other legal or procedural deficiencies, his decision must be affirmed. See Richardson v. Perales, 402 U.S. 389, 401-02 (1971). The substantial evidence standard requires that a decision be supported "by more than a mere scintilla" of evidence, or, otherwise stated, "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Id. at 401 (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). "[O]nce an ALJ finds facts, [a court] can reject those facts 'only if a reasonable factfinder would *have to conclude otherwise*.'" Brault v. Social Sec. Admin., Comm'r, 683 F.3d 443, 448 (2d Cir. 2012) (emphasis in original) (quoting Warren v. Shalala, 29 F.3d 1287, 1290 (8th Cir. 1994)).

Plaintiff claims that her son's learning disabilities, silent seizures, and asthma qualify him for supplemental security income. The ALJ found that the he has the following severe impairments: learning disorder, attention deficit hyperactivity disorder ("ADHD"), asthma, and headaches. However, he concluded that the child "does not have an impairment or combination of impairments that meets or medically equals the severity of" a listed impairment. Upon review of the ALJ's decision and the record, I find that the ALJ's conclusion is supported by substantial evidence.

First, the ALJ rejected a severe impairment under Listing 112.11 for learning disorder or ADHD. Under this Listing, the evidence must show an "[e]xtreme limitation of one, or marked limitation of two, of the following areas of mental functioning":

1. Understand, remember, or apply information.
2. Interact with others.
3. Concentrate, persist, or maintain pace.

      4. Adapt or manage oneself.

In concluding that plaintiff's son did not meet these criteria, the ALJ noted plaintiff's own statements in the function report that she completed, expressing that her son can read simple words and sentences, read and understand stories in books and magazines, spell most three-to-four letter words, and understand money (i.e., can make correct change). Plaintiff also confirmed that her son is able to work on arts and craft projects and keep busy on his own.

      The ALJ then discussed the child's Individualized Education Program ("IEP"), which placed him in the "low average range" for verbal comprehension, "upper limits of the average range" for his visual spatial score, "superior range" for fluid reasoning, and "average range" for both working memory and processing speed. His full-scale IQ score was also in the average range. His file further indicated that he demonstrated good "frustration tolerance" and motivation; that he is able to stay on task; and that if he became restless, a verbal reminder to focus would be sufficient to bring him back to the right path. Moreover, the IEP specified that the child does not need "strategies . . . to address behaviors that impede" his learning; does not need a behavioral intervention plan; and does not need a service to address his communication needs.

      Next, the ALJ reviewed the child's teacher's report, which stated that he enjoys being a class helper; is responsive to the class and to the school's good-behavior point system; enjoys playing outside, riding his bicycle, and being with friends at lunch time; and is a talented artist who enjoys sharing his artwork. Of particular mention is that the teacher reported that he is able to participate in all school activities.

      The ALJ also rejected a severe impairment for asthma under Listings 103.02 and 103.03 and for migraine headaches under the neurological Listings found in section 111.00. As for

4

asthma, the ALJ pointed out that the child was never hospitalized for asthma exacerbations during the period being adjudicated, nor was he hospitalized three times within a 12-month period and at least 30-days apart, both of which are required under the Listing. As for the migraines, the ALJ noted that migraines are usually a symptom of a listed impairment, not an impairment itself. He then went on to

> determine[] that the medical evidence did not support listing level severity. Specifically, the record fails to demonstrate evidence of epilepsy, vascular insult to the brain, benign brain tumors, cerebral palsy, a spinal cord disorder, communication impairment, myasthenia gravis, muscular dystrophy, peripheral neuropathy, neurodegenerative disorders of the central nervous system, traumatic brain injury, coma or persistent vegetative state, multiple sclerosis, or any other motor neuron disorder.

Nevertheless, understanding that the child's symptoms, even if unconnected to an underlying Listing, could cumulatively render him disabled under the Regulations, the ALJ engaged in a holistic analysis to compare "how the child functioned in all settings and at all times" with how other children of the same age functioned. To do so, he considered the child's performance in six functional equivalence domains: Acquiring and Using information; Attending and Completing Tasks; Interacting and Relating with Others; Moving About and Manipulating Objects; Caring for Yourself; and Health and Physical Well-Being.

For five out of the six categories, the ALJ found that the child had either less than marked limitations or no limitations. Among other things, he noted that, (1) when on task, the child works independently, completes assignments, responds appropriately, and grasps the subject matter; (2) despite lacking discipline in some respects, the child's "records generally indicate satisfactory behavior including great participation and engagement"; (3) the child is not limited in his physical ability as he can ride his bicycle, play basketball and cards, go outdoors with his friends, and complete art projects; (4) the child has no problems bathing, dressing, feeding

5

himself, cooperating with others, washing dishes, and cleaning his room and the bathroom; and (5) the child had normal MRI and EEG scans and his asthma is generally controlled with his inhaler.

The only category for which the ALJ acknowledged marked limitations was attending and completing tasks. For example, the child's teacher indicated that he "has a serious problem focusing long enough to finish assigned activit[ies] or tasks, refocus[] on tasks when necessary, and carry[] out simple-step instructions." Even so, his teacher also conveyed that "there are other times when [the child] does all he needs to" and that, when on task, "he works independently and completes assignments."

Finally, the ALJ performed a detailed analysis of the child's medical records, the state psychological consultants' opinions, and plaintiff's hearing testimony. Of relevance, the ALJ found that the "records show only a sporadic and inconsistent history of treatment for his physical and mental conditions." For example, the child only saw his neurologist, Dr. Jose Serruya, on two occasions, neither of which demonstrated a severe health issue. Further, the ALJ noted that records from the first visit "indicate the claimant was in good health, with no weight loss, no weakness, no blackouts or seizures, and had no musculoskeletal problems. The neurological examination was within normal limits." On the second visit, Dr. Serruya indicated that the MRI and EEG were normal and set a follow-up appointment four weeks out, which it doesn't appear ever happened.

The state evaluators likewise determined that "[t]he child's medically determinable impairment or combination of impairments is severe, but does not meet, medically equal, or functionally equal the listings." In so deciding, the examiners concluded that the objective

6

evidence did not support the child's/plaintiff's statements about the intensity, persistence, or functionally limiting effects of the symptoms.

Based on the foregoing and on the record as a whole, the ALJ's decision was supported by substantial evidence.

## CONCLUSION

The case is dismissed and the Clerk is directed to enter judgment accordingly.

**SO ORDERED.**

_____<br>U.S.D.J.

Dated: Brooklyn, New York
       June 17, 2020